## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARRYL SMITH
4704 Melrose Street
Philadelphia, PA 19137,

               Plaintiff,

        v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA
751 Broad Street
Newark, NJ 07102,

and

GAUDENZIA DRC, INC.
3200 Henry Avenue
Philadelphia, PA 19129

and

GUADENZIA DRC, INC. SHORT AND
LONG TERM DISABILITY INSURANCE
PLAN

             Defendant.

Case No.

## COMPLAINT

Plaintiff Darryl Smith, through his undersigned counsel and for his complaint against Defendants The Prudential Insurance Company of America, Gaudenzia DRC, Inc., and the Gaudenzia DRC, Inc. Short and Long Term Disability Insurance Plan, states as follows:

## INTRODUCTION

1.    Plaintiff brings this action pursuant to Section 502(a) and (c) of ERISA, 29 U.S.C. § 1132(a) and (c), seeking LTD benefits due pursuant to the terms of the Plan, statutory penalties for the repeated failure to produce plan documents upon request pursuant to ERISA Section 104(b),

29 U.S.C. § 1024(b), and attorney's fees and costs pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

## THE PARTIES

2.      Plaintiff Darryl Smith ("Mr. Smith") is a resident of Philadelphia, Pennsylvania, and an employee of Defendant Gaudenzia DRC, Inc. ("Gaudenzia").

3.      Gaudenzia is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 3200 Henry Avenue, Philadelphia, Pennsylvania 19129.

4.      Defendant Gaudenzia DRC, Inc. Short and Long Term Disability Plan ("the Plan") is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), that provides short and long-term disability benefits to eligible plan participants.

5.      Mr. Smith is, and at all times relevant to this Complaint has been, a participant in the Plan.

6.      Gaudenzia is the Plan's Sponsor and Administrator as those terms are defined in Section 3 of ERISA, 29 U.S.C. § 1002.

7.      The Plan is funded through a contract of insurance (group contract G-60119-PA) ("the Group Contract") Gaudenzia purchased from Defendant Prudential Insurance Company of America ("Prudential"), which is headquartered at 751 Broad Street, Newark, Jersey 07102, and which maintains an office in this district and division.  A copy of the Group Contract is appended hereto as Exhibit A.

8.      The Plan's formal Plan document, summary plan description, and other governing documents have been wrongfully withheld from Mr. Smith.

9.      Prudential contends that it is the Plan's "Claims Administrator" and it further contends that it has "the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." Exhibit A at 55. As the entity reputedly responsible for adjudicating claims for Plan benefits and paying those benefits, Prudential is a Plan fiduciary that operates under an inherent conflict of interest as a matter of law.

10.     Guadenzia, as the Plan's Administrator, is a fiduciary pursuant to Section 2 of ERISA, 29 U.S.C. § 1002.

## JURISDICTION AND VENUE

11.     The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

12.     At all relevant times, the Plan was and is administered in the Eastern District of Pennsylvania. Venue is thus proper in the United States District Court for the Eastern District of Pennsylvania. 29 U.S.C. § 1132(e)(2).

13.     The Court has personal jurisdiction over Defendants as the Plan is administered in this District and Division, Gaudenzia is domiciled in this District and Division, and Defendants regularly transact business in this District and Division.

14.     Section 503 of ERISA, 29 U.S.C. § 1133, provides a mechanism for administrative or internal appeals of benefit claim denials. Those avenues of appeal have been exhausted.

## THE PLAN AND APPLICABLE STANDARD OF REVIEW

15.     Prudential drafted the Group Contract insuring the Plan in its entirety.

16.     The employees or agents of Gaudenzia and Prudential did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from Gaudenzia to Prudential before purchasing the group contract insuring and funding the Plan.

17.     Gaudenzia, as the Plan's sponsor, did not retain for itself in its role as the Plan's Administrator the discretionary authority to construe or interpret the terms of the Plan and determine eligibility for Plan benefits.

18.     Gaudenzia, neither as the Plan's sponsor nor as the Plan's Administrator, delegated the discretionary authority to construe or interpret the terms of the Plan and determine eligibility for Plan benefits to Prudential.

19.     Gaudenzia never amended the Plan to confer the discretionary authority to construe or interpret the terms of the Plan and determine eligibility for Plan benefits upon Prudential.

20.     No document prepared or ratified by Gaudenzia delegates any discretionary authority to construe or interpret the terms of the Plan and determine eligibility for Plan benefits upon Prudential.

21.     Prudential, as the drafter of the group insurance contract insuring and funding the Plan, could not delegate discretionary authority to construe or interpret the terms of the Plan and determine eligibility for Plan benefits upon itself.

22.     Prudential therefore lacked the proper discretionary authority to construe or interpret the terms of the Plan and determine eligibility for Plan and its adverse claim determinations in this matter are to be reviewed under the *de novo* standard of review.

23.     For eligible participants such as Mr. Smith, the Group Contract provides STD benefits in the form of a weekly benefit of $250.00 for a maximum of 24 weeks.  Exhibit A. Assuming a participant remains disabled under the terms of the Plan after exhausting his or her short-term disability ("STD") benefits, the participant is entitled to long-term disability ("LTD") benefits in the form of a monthly benefit that is 50% of the monthly earnings of the employee, but no more than $8,000.00 as the maximum monthly benefit.  *Id.*

24.     In order to receive STD and LTD benefits, a Plan participant must, *inter alia*, satisfy the Group Contract's definition of Disabled.

25.     With respect to STD benefits and the first 24 months of LTD benefits, the Group Contract defines an employee as disabled when:

- [He or she is] unable to perform the ***material and substantial duties*** of [his or her] ***Regular Occupation*** due to [his or her] ***sickness*** or ***injury***; and

- [He or she is] under the ***regular care*** of a ***doctor***, and

- [He or she has] a 20% or more loss in [his or her] ***weekly earnings*** due to that sickness or injury.

Exhibit A.

26.     The Group Contract defines "material and substantial duties" as "duties that: are normally required for the performance of your Regular Occupation; and cannot be reasonably omitted or modified."  *Id.*

27.     Additionally, the Group Contract states that:

Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:

1. Your doctors; and
2. Doctors, other medical practitioners or vocational experts of our choice.

*Id.*

## FACTS COMMON TO ALL COUNTS

28.     Mr. Smith was born on October 20, 1981 and is a single father to a young daughter. He is a graduate of William Paterson University with a bachelor's degree in sociology.

29.     Mr. Smith began working as a substance abuse counselor for Gaudenzia on May 24, 2010.

30.     Gaudenzia is an addiction treatment and recovery facility that offers a range of programs for a diverse clientele, including but not limited to homeless individuals, HIV symptomatic substance abusers, individuals involved in the criminal justice system, and abusers who have mental disorders.

31.     Mr. Smith's position as a substance abuse counselor has been categorized as a "light duty" position by the Plan and his employer.

32.     Gaudenzia failed to provide Prudential with a copy of Mr. Smith's position description; however, Mr. Smith's position required him to conducting daily meetings with clients, care managers, and third parties.  In addition, he: constructs and monitors daily activities for 30 or more clients; records daily, weekly, and monthly progress reports using a computer; and verbally communicates with other staff members.

33.     Because the Gaudenzia clients Mr. Smith worked with were current and former criminal offenders involved in transition from incarceration or pretrial diversion programs, Mr. Smith also occasionally acted as *de facto* security due to the low client to staff ratio at his facility.

34.     In early November 2016, Mr. Smith began experiencing migraine headaches and vertigo, in addition to intermittent pain in his neck, back, and legs that had been present since 2015.

35.     As his pain and dizziness persisted, Mr. Smith encountered increasingly more difficulty in performing his job and was absent from Gaudenzia on November 14, 2016.

36.     After visiting his primary care physician, Nathaniel Abramson, D.O. on multiple occasions, Dr. Abramson concluded that Mr. Smith was unable to complete the daily tasks of his position at Gaudenzia and recommended a neurological consultation and imaging.

37.     Mr. Smith, enduring severe pain and vertigo, left work on November 22, 2016, and applied for STD benefits.

38.     On or about February 9, 2017, Lucille Mae Enriquez, RN, a Prudential nurse case manager, reviewed Mr. Smith's claim and opined that because his symptoms were self-reported and because his physician's treatment notes were sparse, Mr. Smith was not disabled.

39.     Prudential then sent Mr. Smith a letter dated February 10, 2017 in which it stated that his claim for STD benefits was denied ("the Initial Denial Letter").

40.     The Initial Denial Letter noted Mr. Smith's lab work and x-ray findings were unremarkable, which is unsurprising as migraines and vertigo are not typically observable on radiographic tests, or in blood work.

41.     The Initial Denial Letter also claimed, incorrectly, that Prudential had not received any documentation that would support restrictions and limitations from performing the light duties his regular occupation.

42.     Mr. Smith promptly appealed Prudential's denial of his claim and completed an "Activities of Daily Living" Questionnaire provided by Prudential for his appeal wherein Mr. Smith explained his limitations, described his symptoms, and identified his various medications. His dizziness impacted his ability to groom himself, his hearing and memory were impacted, and his appetite was diminished.  Mr. Smith further noted that he loved his job and wanted to return to work, but that he was unable to do so given his condition.

43.    Mr. Smith continued to receive medical treatment while his initial appeal was pending.  He was seen by an optometrist as well as at the Drexel Neuroscience Institute where his symptoms and Dr. Abramson's prior diagnoses were confirmed.  In addition, Mr. Smith was seen for a cardiac evaluation after experiencing chest pains.

44.    Prudential's evaluation of Mr. Smith's initial appeal was flawed in that it repeated the flawed findings of the Initial Denial Letter, penalized Mr. Smith for Dr. Abramson's failure to legibly and fully document his encounters with Mr. Smith, and criticized his delay in seeking medical treatment for his conditions without considering why Mr. Smith's was delayed in receiving treatment; namely, difficulty scheduling appointments and changes in his benefits plan.

45.    Prudential denied Mr. Smith's initial appeal by way of a letter dated April 11, 2017, ("the Second Denial Letter"), which provided him with an additional level of appeal.

46.    Mr. Smith's medical condition continued to deteriorate as he pursued a second level appeal.

47.    On May 31, 2017, Mr. Smith, through counsel, wrote to Gaudenzia as the Plan's Administrator and requested, pursuant to 29 U.S.C. § 1024(b)(4):

     a.  The Plan's complete document, including any amendments thereto;

     b.  the Plan's latest updated summary plan description, if different than the plan document, including any applicable statements of material modification;

     c.  the Plan's trust agreement;

     d.  the Plan's latest annual report;

     e.  any terminal report;

     f.  any applicable collective bargaining agreement or employment contract related to Mr. Smith's participation in the Plan; and

       g.   any other instruments under which the Plan is established or operated.

(hereinafter "the 104(b) Request").  A copy of 104(b) Request is appended hereto as Exhibit B.

48.      The 104(b) Request advised Gaudenzia that the failure to furnish the requested items within 30 days of a written request may subject it to statutory penalties in the amount of $110 per day. *See* 29 U.S.C. § 1132(c); 29 C.F.R. § 2575.502c-1.  Exhibit B.

49.      Gaudenzia received the 104(b) Request on June 6, 2017.

50.      On June 26, 2017, Khalilah Walker, a representative of Gaudenzia's human resources department responded to the 104(b) request by phone and indicated an intent to comply with it.

51.      Gaudenzia did not comply with the initial 104(b) Request.

52.      On June 6, 2017, Mr. Smith requested, through counsel, that Prudential open a LTD claim on his behalf as well since he had been out of work due to his disability for more than six months.

53.      On June 7, 2017, Prudential declined to open an LTD claim on Mr. Smith's behalf and stated that such a claim was simply a continuation of an STD claim under the Plan.

54.      On July 25, 2017, Mr. Smith sent Gaudenzia a second request for Plan documents pursuant to Section 104(b) ("the Second 104(b) Request") and enclosed and additional copy of the initial 104(b) Request with it.  A copy of the Second 104(b) Request is appended hereto as Exhibit C.

55.      Gaudenzia received the second 104(b) request on July 28, 2017.

56.      Gaudenzia did not comply with the Second 104(b) Request.

57.      Mr. Smith continued to receive medical treatment for his various conditions throughout the late spring and early summer of 2017.

58.     On September 1, 2017, Dr. Abramson reconfirmed Mr. Smith's symptoms, noting:

    a.   Mr. Smith experiences daily and severe vertigo episodes rated as a 9/10;

    b.   that the vertigo has not been successfully treated;

    c.   that Mr. Smith experiences daily and severe migraines with a regular severity of 9/10;

    d.   that Mr. Smith's various medications caused numerous side effects including drowsiness, sedation, and nausea;

    e.   that Mr. Smith also experiences severe neck, shoulder, and back pain for up to 6 hours at a time; and that Mr. Smith exhibits chronic fatigue more than four times a month, lasting for about 1 to 2 days.

59.     With respect to his functional limitations, Dr. Abramson found that Mr. Smith was unable to perform the following:

    a.   Lifting, bending and/or scooping, twisting, frequent walking, routine, repetitive tasks at a consistent pace;

    b.   detailed or complicated tasks;

    c.   using a computer throughout the day;

    d.   meeting strict deadlines;

    e.   close interaction with coworkers/supervisors;

    f.   supervising employees;

    g.   interacting with clients/patients and business partners;

    h.   fast paced tasks;

    i.   sit, stand, or walk for more 2 in an eight-hour work day before needing a 10-minute break; and

j.   that such breaks would occur more than 10 times throughout Mr. Smith's work

day.

60.   Dr. Abramson expressly found that Mr. Smith was disabled from his regular

occupation.

61.   Dr. Abramson's opinion was supported by the opinions of Mr. Smith's neurology

team.

62.   Mr. Smith's mental health providers also concurred Mr. Smith was disabled from

working.

63.   On September 13, 2017, Mr. Smith, through counsel, sent Gaudenzia a third request

for Plan documents pursuant to ERISA Section 104(b) ("the Third 104(b) Request"), and enclosed

copies of the initial and second 104(b) request with it. A copy of the Third 104(b) Request is

appended hereto as Exhibit D.

64.   The Third 104(b) Request, like the others before it noted the prejudice Mr. Smith

had experienced due to Gaudenzia's repeated failure to furnish him with the requested documents

and apprised Gaudenzia of its continued exposure to statutory penalties in the amount of $110 per

day. *Id.*

65.   Gaudenzia did not respond to the Third 104(b) Request.

66.   Mr. Smith submitted his second level appeal to Prudential on October 5, 2017.  That

appeal was supported by over 500 pages of documentation.

67.   While the second appeal was pending, Mr. Smith's condition began to improve

somewhat, and he was able to return to work with restrictions and accommodations during the

week of November 27, 2017.

68.     On November 22, 2017, counsel wrote to Ms. Walker again regarding Mr. Smith's return to work and again reminded her of Gaudenzia's failure to produce documents in response to Mr. Smith's 104(b) Requests.

69.     Gaudenzia again failed to respond to the 104(b) Requests.

70.     Prudential denied Mr. Smith's appeal by way of a letter dated December 6, 2017.

71.     Prudential's consideration of Mr. Smith's second-level appeal was flawed and denied him a full and fair review of his claim.

72.     Prudential failed to consider all of the evidence Mr. Smith submitted in support of his claim, including the opinions of his treating physicians.

73.     Prudential failed to provide Mr. Smith with the right to review and respond to any new evidence or rationales for denying his claim before making a final decision on his appeal.

## COUNT I – CLAIM FOR BENEFITS PURSUANT TO ERISA § 502(a)(1)(B)

74.     Mr. Smith repeats, reaffirms, and realleges paragraphs 1 through 73 of the Complaint as if they were fully restated at length herein.

75.     Mr. Smith has exhausted his administrative remedies under the Plan and, thus, all conditions precedent to the filing of this action have been performed or have occurred.

76.     Mr. Smith was completely disabled from performing the material duties of his Regular Occupation and was unable to earn any income.

77.     The denial of Mr. Smith's claim for benefits was contrary to the terms of the Plan.

78.     Defendant failed to provide Mr. Smith with a full and fair review of his claim in violation of Section 503 of ERISA, 29 U.S.C. § 1133, as well as 29 C.F.R. § 2560.503-1.

79.     Under Section 502(a)(1)(B) of ERSIA, 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to his under the terms of his

plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

80.     As a result of Defendant's denial of Mr. Smith's claim for benefits, subsequently upholding that decision, and the refusal to overturn it, there exists an actual case and controversy by and between the parties hereto entitling Mr. Smith to a declaration of rights clarifying the benefits to which he is entitled under the Plan.

WHEREFORE, Mr. Smith prays the Court grant him the following relief with respect to Count I of his Complaint:

  a.  That the Court enter judgment in favor of Mr. Smith and against Prudential, and award Mr. Smith all past due STD and LTD benefits with interest;

  b.  That the Court order the Prudential to pay Mr. Smith prejudgment interest on all benefits that have accrued prior to the date of judgment;

  c.  That the Court award Mr. Smith his reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit; and

  d.  That Mr. Smith recovers any and all other relief to which he may be entitled.

### COUNT II – CLAIM FOR STATUTORY PENALTIES
### PURSUANT TO ERISA § 502(a)(1)(A) & 502(c)

81.     Mr. Smith repeats, reaffirms, and realleges paragraphs 1 through 80 of the Complaint as if they were fully restated at length herein.

82.     Mr. Smith repeatedly requested various Plan documents from Gaudenzia in accordance with ERISA § 104(b), 29 U.S.C. § 1024(b).

83.     Gaudenzia has heretofore failed to respond to Mr. Smith's requests, despite repeated requests for copies of the requested documents.

84.     Mr. Smith has been prejudiced by Gaudenzia's repeated failure to comply with Section 104(b) and his requests by, *inter alia*, not receiving complete and authoritative copies of the Plan documents to review and use in appealing Prudential's adverse benefit determination.

85.     Pursuant to 29 U.S.C. § 1132(c) and 29 C.F.R. § 2575.502c-1, the failure to produce the requested documents within 30 days of Mr. Smith's request exposes Gaudenzia to statutory penalties in an amount not exceeding $110 per day for each day that the request remains unfulfilled beyond the 30-day deadline.

86.     Pursuant to 29 U.S.C. § 1132(a)(1)(A), Mr. Smith may bring a civil action to obtain the relief authorized by 29 U.S.C. § 1132(c) and 29 C.F.R. § 2575.502c-1.

87.     Gaudenzia's failure to comply with ERISA § 104(b), 29 U.S.C. § 1024(b), lacks any reasonable or plausible justification, was intentional, and was done in bad faith.

88.     Mr. Smith is therefore entitled to an award of statutory penalties.

WHEREFORE, Mr. Smith prays the Court grant him the following relief with respect to Count II of his Complaint:

a.     That the Court enter judgment in favor of Mr. Smith and against Gaudenzia, and award Mr. Smith $110 per day in statutory penalties from June 30, 2017 until the date it comes into compliance with 29 U.S.C. § 1024(b)(4);

b.     That the Court order Gaudenzia to pay Mr. Smith prejudgment interest on all statutory penalties that have accrued prior to the date of judgment;

c.     That the Court award Mr. Smith his reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit; and

d.     That Mr. Smith recovers any and all other relief to which he may be entitled.

Respectfully submitted,

Adam Harrison Garner (Bar I.D. 320476)
The Garner Firm, Ltd.
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 645-5955 (Tel)
(215) 645-5960 (Fax)
adam@garnerltd.com

Dated: March 13, 2018